# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Ricardo Rosario,<br>          Petitioner,<br><br>          v.<br><br>United States of America,<br>          Respondent. | CIVIL ACTION NO.<br>3:09-cv-1538 (SRU) |

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The petitioner, Ricardo Rosario, appearing *pro se*, seeks to vacate and correct his

sentence pursuant to 28 U.S.C. § 2255.  Rosario is confined at the Yazoo City Federal

Correctional Complex in Yazoo City, Mississippi, having been convicted by a jury and

sentenced to 240 months' imprisonment for conspiracy to possess with intent to distribute more

than 1000 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  *See*

Judgment, *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 1119).  Rosario's section

2225 petition, filed on September 28, 2009, raises numerous grounds for relief, stemming from

assertions that his attorney rendered constitutionally ineffective assistance, both at trial and on

appeal, and that the sentence imposed by the court was unconstitutional.[1]  *See* Motion to Vacate,

Set Aside or Correct Sentence (doc. # 1).  Rosario requests that this court vacate his sentence of

240 months' imprisonment and impose the mandatory minimum sentence of 120 months.

On May 10, 2010, Rosario moved to amend his 2255 petition (doc. # 11), to add a ground

related to then-pending changes to the Sentencing Guidelines, which went into effect on

November 1, 2010.  I granted that motion on May 25, 2010 (doc. # 12).  On July 15, 2013,

Rosario again moved to amend his petition (doc. # 34), seeking to bolster his ineffective

---

[1] In Rosario's original section 2255 motion he lays out eleven distinct grounds for relief, some of which are duplicative.

assistance of counsel claims and add claims that: (1) his right to a Speedy Trial was violated; (2) his Sixth Amendment right to counsel was violated; and (3) his right to a jury trial was violated, pursuant to *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which requires the jury, not the trial judge, to find facts that trigger or increase a mandatory minimum sentence.

Rosario's motion to amend (doc. #34) is GRANTED.  For the reasons discussed below, however, his section 2255 petition is DENIED.

**I.    Background**

A.    The Offense Conduct

Frank Estrada and his criminal associates began running a violent drug trafficking organization within the city of Bridgeport, Connecticut in the late 1980s.  Beginning in approximately 1995, upon his release from state prison, Estrada expanded his narcotics trafficking organization and distributed large, wholesale quantities of heroin and crack cocaine for street-level distribution throughout the cities of Bridgeport, New Haven and Meriden, Connecticut.  In January 2002, Estrada pleaded guilty to fourteen federal charges relating to his drug trafficking organization and entered into a cooperation agreement with the government. Estrada then testified against Rosario and his co-defendants at trial.

Rosario grew up in the P.T. Barnum housing project, which became one of the Estrada organization's main retail outlets for heroin and crack cocaine.  Estrada testified that he met Rosario through one of his lieutenants and that within a couple of months, Rosario began packaging heroin for the organization.  Estrada further testified that firearms were used in connection with the conspiracy and that he saw Rosario in possession of firearms.  According to Estrada, Rosario kept one of Estrada's revolvers at his residence.  Rosario also allegedly showed Estrada a firearm he had purchased – a Glock 9-milimeter.  Rosario admitted that firearms were

present that the heroin bagging sessions he attended, but denied that any of the firearms belonged to him.

Estrada testified that Rosario played a significant role in the heroin packaging sessions and that his responsibility increased over time. Other cooperating witnesses corroborated Estrada's testimony. Rosario was identified as the "fastest spooner," who provided guidance to others on how to more efficiently package heroin. Moreover, witness Hector Cruz participated in a controlled buy of heroin, in which Rosario's fingerprints were found on the packaging of the purchased drugs.

B.      Procedural History

In June 2001, a third superseding indictment charged Rosario with, among other things, conspiracy to possess with intent to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Rosario was tried over several weeks in March 2002. On April 2, 2002, the jury convicted Rosario of violating sections 841(a)(1) and 841(b)(1)(A). The jury completed a verdict form in which it indicated a unanimous finding that Rosario's participation in the heroin conspiracy involved 1,000 grams or more of heroin.

At sentencing on September 27, 2002, I determined that Rosario's base offense level was thirty-six and found that a two-point firearm enhancement was warranted, yielding a total offense level of thirty-eight. I further found that Rosario was ineligible for safety-valve relief under U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2(a)(2), because he possessed a firearm in connection with the offense of conviction, and denied credit for acceptance of responsibility under U.S.S.G. § 3E1.1, because Rosario put the government to its burden of proof at trial. However, I declined to apply a proposed three-level upward adjustment to Rosario's base offense level (the "role enhancement"), finding that Rosario did not play a supervisory role in the organization. I also

departed downward to criminal history category I, after finding that criminal history category II – the category in which Rosario's criminal record placed him – overstated the seriousness of his criminal history.

Based on a total offense level of thirty-eight and a criminal history category of I, Rosario's resulting Guidelines range was 235 to 293 months' imprisonment. I sentenced Rosario to a term of 240 months' imprisonment, followed by a ten-year term of supervised release. On appeal, the Second Circuit affirmed the denial of credit for acceptance of responsibility under U.S.S.G. § 3E1.1, but remanded for proceedings pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and for further findings on Rosario's eligibility for relief under the "safety valve" provision of U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2(a).

On November 30, 2006, I determined that Rosario was ineligible for safety-valve relief, and that I would not have imposed a nontrivially different sentence under an advisory Guidelines scheme. Specifically, I found that Rosario possessed a firearm in connection with the offense of conviction and that his prior juvenile conviction resulted in three criminal history points, placing him in a criminal history category II before I departed downward. Rosario again filed a notice of appeal on December 5, 2006.

On his second appeal, Rosario challenged the decision that he was ineligible for safety-valve relief, arguing that I incorrectly found that he possessed a gun in connection with the offense and improperly relied on the testimony of Frank Estrada in coming to that conclusion. Rosario also disputed the finding that he had more than one criminal history point. On May 30, 2008, the Second Circuit issued a decision rejecting Rosario's appeal. *United States v. Rosario*, 280 F. App'x 78 (2d Cir. 2008), *cert. denied*, 555 U.S. 937 (2008). On or about August 28, 2008, Rosario submitted a petition for a writ of certiorari to the United States Supreme Court.

The Supreme Court denied that petition on October 6, 2008.

## II.   Standard of Review

In order to support a claim for relief under section 2255, a petitioner must establish that his "sentence was imposed in violation of the Constitution or Laws of the United States."  28 U.S.C. § 2255.  "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994) (quoting *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  The standard is a high one; constitutional mistakes will not be fixed through a writ of habeas corpus unless they have had a "substantial and injurious effect" that results in "actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted).

It is well established that a federal prisoner may not use a section 2255 petition to relitigate questions that were resolved during a direct appeal.  *See United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995).  A petitioner generally may not raise a claim on habeas review if he did not properly raise it on direct review unless he is able to show "cause and actual prejudice."  *See Reed v. Farley*, 512 U.S. 339, 354 (1994); *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.").  A petitioner may raise a claim of ineffective assistance of counsel, however, even if that claim was not raised previously at trial or on appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), set forth a two-pronged test to determine whether a lawyer's representation was constitutionally ineffective.  Under *Strickland*, to prevail on an ineffective assistance claim, a defendant must demonstrate

5

both (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687-91.  This is known as the "cause and prejudice test."  *Id.* at 697.  To satisfy the performance prong, the petitioner must show that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690.  To satisfy the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Thus, the mere possibility that a particular deficiency might have prejudiced the defendant is not enough.

### III.   Discussion

#### A.   Procedural Bar to Rosario's Claims

As a threshold matter, the government argues that Rosario is procedurally barred from raising many of his claims, because he did not pursue them on direct appeal[2] and they are not claims for ineffective assistance of counsel.  The government asserts that Rosario is also barred from amending his petition to add new claims, because those claims could have been brought in his original section 2255 petition and do not relate back to the claims contained therein.  Rosario contends that the court should construe his claims liberally because he is *pro se*, and that under a liberal standard of interpretation all of his claims effectively can be read as ineffective assistance of counsel claims.  Although many of Rosario's claims appear to have been procedurally defaulted, I will apply the "liberal standard of interpretation" to which *pro se* pleadings are entitled and assume Rosario's grounds for relief all raise ineffective assistance of counsel claims.

---

[2] Rosario's appeals to the Second Circuit challenged only the denial of credit for acceptance of responsibility under U.S.S.G. § 3E1.1 and the conclusion that he was not eligible for relief under the "safety valve" of U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2(a).  *See* Def.'s 2002 Appellate Brief, Docket No. 02-1543(L); Def.'s 2006 Appellate Brief, Docket No. 06-5655-cr.

*See Chang v. United States*, 250 F.3d 79, 86 n. 2 (2d Cir. 2001); *Billy-Eko v. United States*, 8 F.3d 111, 117 (2d Cir. 1993), *abrogated on other grounds by Massaro v. United States*, 538 U.S. 500 (2003).  Nonetheless, Rosario's petition fails for the reasons detailed below.

      B.  <u>Failure to Communicate Plea Offer</u>

      Rosario's first ground for relief alleges that his trial attorney, Robert Sullivan, was ineffective for failing to inform him of a plea offer that would have permitted him to plead to a lesser charge.  "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also Pham v. United States*, 317 F.3d 178, 183 (2d Cir. 2003) ("There is no dispute that failure to convey a plea offer is unreasonable performance.").  The facts, however, not the law, doom this first ground for relief.

      Rosario asserts that the government offered, through trial counsel, to permit him to tender a guilty plea to a violation of 21 U.S.C. § 841(b)(1)(B) in return for a dismissal of the section 841(b)(1)(A) charge.  In response, the government submitted an affidavit from Sullivan, which states that he recalls receiving only two proposed plea offers, in the form of letters from the U.S. Attorney's office.  The letters, dated May 17 and July 31, 2001, are virtually identical in substance and neither mentions dismissal of the section 841(b)(1)(A) charge.  To the contrary; consistent with section 841(b)(1)(A), both letters offer to allow Rosario to plead guilty to conspiracy to possess with intent to distribute 1,000 grams or more of heroin.  Both also state that the applicable penalties include a ten-year mandatory minimum sentence, which is consistent only with section 841(b)(1)(A) and not with section 841(b)(1)(B).  Sullivan's affidavit notes that the letters are fully consistent with his recollection of the government's pre-trial position and that he did not recall any offer to allow Rosario to plead to a lesser quantity than the

1,000 grams charged in the indictment.

Rosario does not claim that an alternate plea offer existed.  His contention that the government's offers permitted him to plead guilty to section 841(b)(1)(B) likely stems instead from the first page of the May 17 letter, which refers to section 841(b)(1)(B) instead of section 841(b)(1)(A).  The government, however, persuasively argues that this was a typographical error that did not alter the substance of the proposed agreement.  As evidence, the government points to another plea agreement filed in this matter, signed by co-defendant Nelson Carrasquillo on August 15, 2001, in which the same error appeared.  In that situation, the error was corrected with a hand-written cross-out and substitute "(A)" before filing.   Because the substantive terms of the May 17 letter are consistent with section 841(b)(1)(A), not section 841(b)(1)(B), it appears that the government made the same mistake in Rosario's case.  Despite the error, it is clear that Rosario would not have been given the option to plead guilty to section 841(b)(1)(B).

Rosario also asserts that, whatever the terms of the government's offers, he never saw or discussed the May 17, 2001 letter and only reviewed the cover sheet of the July 31, 2001 letter, without his attorney present.  Rosario states that he went to Sullivan's office for a meeting in August 2001, to discuss the government's offer, but Sullivan was not available to review the offer with him.  Instead, Sullivan's secretary left a copy of the plea agreement for him to review, on his own.  Rosario asserts that Sullivan did not subsequently discuss the terms of the offer with him and that he never tried to persuade Rosario to plead guilty.  Consequently, the offer lapsed, depriving Rosario of the opportunity to reduce his sentencing exposure and to receive consideration for acceptance of responsibility.

In his affidavit, Sullivan counters that he discussed both letters with Rosario, and that he spoke with Rosario many times over the course of the case about pleading, cooperating, and

trying to arrange a favorable resolution of the case.  Rosario himself acknowledged in a statement submitted at the time of his sentencing that he knew before trial that the government had offered two proposed plea agreements and that he "was stunned" to learn of the "staggering number of years in jail that the government was seeking."  Rosario felt that the government's position was based on incorrect information, and therefore rejected the offers and opted for trial.

Yet, even if Rosario was not aware of or did not fully comprehend the terms of the plea offers, he has not shown that he was prejudiced by his attorney's failure to keep him informed.  First, as discussed above, both letters extend an offer to plead guilty to conspiracy to possess with intent to distribute 1,000 grams or more of heroin in violation of 21 U.S.C. §841(b)(1)(A), an offense carrying a mandatory minimum of ten years' imprisonment and a maximum of life imprisonment.  That is the exact offense that a jury eventually found that Rosario committed, beyond a reasonable doubt.  Thus, the terms of the letters are consistent with the offense with which Rosario was actually charged and convicted.

 Second, any variation in the calculation of Rosario's sentence due to his decision to go to trial did not prejudice Rosario.  Both letters contemplate a total offense level of forty, reflecting a base level of thirty-eight, a two-point firearm enhancement, a three-point supervisor enhancement, and a three-point reduction for acceptance of responsibility.  The corresponding Guidelines range in the letters is 292 to 365 months' imprisonment.  That is higher than the Guidelines range that I applied at sentencing.  At sentencing, I calculated Rosario's base offense level as 36 and applied the government's proposed two-point firearm enhancement.  I denied credit for acceptance of responsibility under U.S.S.G. § 3E1.1, because Rosario put the government to its burden of proof at trial, and also declined to apply the government's proposed three-point role enhancement.  As a result, Rosario's total offense level was thirty-eight and his

Guidelines range was 235 to 293 months' imprisonment.[3]  Rosario's sentence of 240 months' imprisonment is at the low end of that range.

Rosario therefore fared better than he would have if I had accepted the Guidelines calculation set forth in the May 17 and July 31 offers.  Moreover, he fared no worse than he would have if I had declined to apply the three-point role enhancement but otherwise accepted the terms of the plea letters at sentencing.  If that had occurred, Rosario's total offense level would have been thirty-seven (base offense level thirty-eight, plus two-point firearm enhancement, minus three points for acceptance of responsibility) and his Guidelines range would have been 210 to 262 months' imprisonment.  Rosario's sentence of 240 months' imprisonment falls squarely within that range.  Importantly, I did not sentence Rosario at the bottom of his calculated Guidelines range and did not reduce his sentence when presented with the opportunity to do so following his *Crosby* remand.  I was able to sentence Rosario to the appropriate sentence; that sentence fell within both the calculated Guidelines range as well as the lowest Guidelines range that would have resulted from acceptance of a plea offer.  Thus, Rosario's ineffective assistance of counsel claim necessarily fails, because his sentence would not have been affected and therefore the second prong of *Strickland* has not been met.  *United States v. Jones*, 455 F.3d 134, 151 (2d Cir. 2006) (noting that both prongs must be met in order for a petitioner to prevail on an ineffective assistance of counsel claim).

### C.   Failure to Object to Two-Level Enhancement for Possession of a Firearm

Rosario's second ground for relief alleges that his counsel was ineffective for failing to object to the two-point firearm enhancement.  Although Rosario's attorney did not challenge the firearm enhancement on appeal, it cannot be said that his attorney's failure to do so was objectively unreasonable.  An attorney need not pursue all potential issues on appeal; rather the

---

[3] Both letters assume a criminal history category I, the level to which I departed down at sentencing.

decision concerning what issues to appeal is left to the professional discretion of the attorney.

Such decisions may be second-guessed in a collateral attack only if it appears that the attorney

"omitted significant and obvious issues while pursuing issues that were clearly and significantly

weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). The other claims pursued by

Attorney Sullivan – lack of reduction for acceptance of responsibility and lack of safety-valve

reduction – were not "clearly and significantly weaker" than the potential firearm enhancement

claim.

Evidence at trial and sentencing clearly showed that Rosario possessed a gun in the

course of his commission of the offense. Rosario claims that, when applying the firearm

enhancement, I improperly relied on testimony of a co-defendant who was not credible, because

he received a downward departure for substantial assistance. Assessing the credibility of a

witness, however, "is distinctly the province of the district court." *United States v. Beverly*, 5

F.3d 633, 642 (2d Cir. 1993). I found the relevant testimony credible, concluded that Rosario

did possess a gun, and accordingly assessed a two-level enhancement. Had his counsel raised

the issue on appeal, Rosario would not have obtained relief. Therefore, counsel's decision not to

object to or appeal the firearm enhancement was neither objectively unreasonable nor

prejudicial.

D. Failure to Object to Government's Knowing Use of Untruthful Testimony

Rosario's third ground for relief alleges that his counsel was ineffective at trial and on

appeal for failing to challenge the government's knowing use of untruthful testimony. That

claim is meritless. Rosario does not offer any specific facts supporting an assertion either that

Frank Estrada or another government witnesses testified falsely, or that the government

knowingly offered such false testimony. The lack of specifics renders Rosario's claim

insufficient on its face, making it unnecessary to proceed to a *Strickland* inquiry.

### E.   Failure to Object to Government Inducements to Witnesses

Rosario's fourth ground for relief alleges that his counsel was ineffective at trial and on appeal for failing to challenge the constitutionality of the government's offering of inducements to witnesses in exchange for their testimony. Rosario argues that the government's case was built solely on "purchased testimony" garnered through promises of leniency, and he requests that I take judicial notice of the number of 18 U.S.C. § 3553(e) and section 5K1.1 motions filed by the government.

Circuit courts around the country have long held that an accomplice witness who has been promised a reduced sentence in return for his testimony may testify consistent with the Due Process Clause, as long as the government fully discloses its bargain so that the jury may evaluate the witness' credibility. *See United States v. Singleton*, 165 F.3d 1297, 1301 (10th Cir. 1999) (*en banc*); *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (*en banc*) ("No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence."); *see also United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987*)* ("We have confidence in the jury's ability to assess counsels' arguments about the inherent unreliability of 'purchased' testimony, and to evaluate the witness' credibility accordingly.").

In this case, several government witnesses were required by their cooperation agreements to testify truthfully in return for a motion by the government for a reduced sentence. Rosario makes no claim that those agreements were not adequately disclosed; to the contrary, he states that his attorney knew of the agreements. Defense counsel was able to present substantial

evidence bearing on prosecution witnesses' credibility through cross-examination; therefore, the jury was able to evaluate the credibility of their testimony. The use of such testimony does not rise to a due process violation or demonstrate the substantial denial of any other constitutional right. Counsel's performance cannot be considered objectively unreasonable and therefore ineffective in this regard.

      F.   <u>Failure to Object to Breach of Right to Jury Determination of All Facts Essential to Sentencing</u>

Rosario's fifth ground for relief alleges that his counsel was ineffective at sentencing and on appeal for failing to object to the violation of his constitutional right to have a jury determine all essential facts. Rosario maintains that his constitutional rights were violated when the court, not the jury, determined the quantity of drugs attributable to him under the Guidelines.

The Supreme Court has held that every element of a crime "must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 232 (1999). The holding in *Jones*, however, does not preclude a district court from considering drug quantity in determining a defendant's relevant conduct for sentencing purposes pursuant to the Sentencing Guidelines. *See United States v. Thomas*, 274 F.3d 655, 663-64 (2d Cir. 2001). District courts are permitted to engage in judicial fact finding that does not affect the applicable statutory range of punishment, without running afoul of the Sixth Amendment. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[N]othing . . . suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute.") (emphasis in original)).

It is well established that once a charged statutory threshold quantity has been admitted by the defendant through a plea or found by a jury beyond a reasonable doubt, the sentencing

court determines by a preponderance of the evidence the quantity to be used when calculating the base offense level and overall Guidelines range.  *See United States v. Vaughn*, 430 F.3d 518, 526-28 (2d Cir. 2005).  When a judge sentences a defendant to a term of imprisonment within the statutory range authorized by a jury verdict and uses the now-advisory Guidelines to calculate the exact sentence, there is no due process violation.  *See id.* (citing *United States v. Booker*, 543 U.S. 220, 245 (2005)); *see also United States v. Belfast*, 611 F.3d 783, 827 (11th Cir. 2010) ("Under an advisory guidelines regime, judicial fact-finding about relevant conduct that supports a sentence within the statutory maximum set forth in the United States Code does not violate the Sixth Amendment.")).

In this case, Rosario was charged in Count Twelve of the Third Superseding Indictment with conspiring to possess with intent to distribute in excess of 1,000 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  *See United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 473).  The jury convicted him on that count, completing a verdict form that indicated a unanimous finding that Rosario's participation in the conspiracy involved 1,000 grams or more of heroin.  Under that statute, Rosario faced a mandatory minimum of ten years' imprisonment and a maximum of life imprisonment.

Pursuant to the well-settled law of this Circuit, I then determined, by a preponderance of the evidence, the precise quantity of heroin involved in Rosario's offense and calculated the corresponding base offense level.  Rosario's Guidelines range, based on his criminal history and the quantity of heroin attributable to him, was within the statutory range of ten years to "life."  Thus, there was no violation of Rosario's constitutional due process rights, and Attorney Sullivan was not ineffective for failing to raise and object to the court's factfinding.

G.  <u>Failure to Object to Violation of Right to Grand Jury Indictment</u>

Rosario's sixth ground for relief alleges that Sullivan was ineffective at sentencing and

on appeal for failing to object to the violation of his right to a grand jury indictment, insofar as

Rosario was not charged with a firearm offense, yet he received a firearm enhancement at

sentencing.  Although not a claim for ineffective assistance of counsel, Rosario's motion to

amend his section 2255 petition seeks to bolster this claim by citing to the Supreme Court's

recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which reversed the Court's

holding in *Harris v. United States*, 536 U.S. 545 (2002), and held that any fact that increases a

defendant's mandatory minimum sentence is an "element" of the offense, not a "sentencing

factor" that a judge may find by a preponderance of the evidence.  *Alleyne* builds on the Court's

precedent in *Apprendi*, which held that other than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury and proved beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 490.

Courts have consistently recognized that enhancements under the Sentencing Guidelines,

such as the two-level enhancement for possession of a firearm in connection with a drug offense

under U.S.S.G. § 2D1.1(b)(1), are simply sentencing factors.  Nothing in the Supreme Court's

decision in *Alleyne* alters that conclusion.[4]  *See Alleyne*, 133 S. Ct. at 2163 ("We have long

recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the

Sixth Amendment."); *see also Apprendi*, 530 U.S. at 481.  To the extent that they do not increase

the defendant's mandatory minimum sentence or lead to a sentence beyond the statutory

maximum, such Guidelines enhancements are properly determined by the sentencing court by a

preponderance of the evidence, within the overall statutory framework.  *See Vaughn*, 430 F.3d at

526-28 (addressing Guidelines calculations based on narcotics quantity, and noting the continuity of this framework pre-*Booker* and post-*Booker*, with the exception that courts must now consider the Guidelines advisory).

Regarding the two-point firearm enhancement, courts have long recognized that possession of a firearm during the commission of a drug offense "may fairly be considered by the court as a factor bearing on the extent of punishment," rather than an element of the substantive crime, which must be charged in the indictment and "established to the satisfaction of the jury beyond a reasonable doubt." *United States v. McGhee*, 882 F.2d 1095, 1098 (6th Cir. 1989); *see also United States v. Bjorkman*, 270 F.3d 482, 493 (7th Cir. 2001) (collecting cases and holding that section 2D1.1(b)(1), which places burden on defendant to show that it was clearly improbable that a weapon was connected with the offense, is consistent with the guarantee of due process).  Thus, Rosario's right to indictment by a grand jury was not violated and, consequently, Attorney Sullivan was not ineffective for failing to object to the enhancement.

H. Failure to Object to Lack of Downward Departure for Minimal Participation

Rosario's seventh ground for relief alleges that Sullivan was ineffective for failing to object to or appeal my refusal to depart downward based on Rosario's minimal participation in the conspiracy.  Rosario contends that a sentencing reduction was warranted, because he played only a "routine" role in the conspiracy and most of his participation occurred while he was a minor.  Moreover, Rosario maintains that he should have been prosecuted under the Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031, *et seq.*, which would have resulted in a much lower sentence.

The law does not support Rosario's contention that he should have been prosecuted under

---

[4] The Second Circuit has held that "*Alleyne* did not announce a new rule of law made retroactive on collateral review." *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013).  Therefore, Rosario's *Alleyne* claim would fail

the JDA.  The Second Circuit has stated that the JDA does not apply to a conspiracy crime merely because a defendant committed some of the charged offenses prior to his eighteenth birthday, if other illegal conduct charged in the indictment was committed as an adult.  *See, e.g.*, *United States v. Wong*, 40 F.3d 1347, 1365-66 (2d Cir. 1994) (defendants committed RICO offenses while they were juveniles, but continued to do so after their eighteenth birthdays, thus offenses were not subject to JDA).  And, the record does not support Rosario claims that I did not consider his "minor role" during sentencing.  To the contrary, I gave careful consideration to the scope of Rosario's offense.

At the initial sentencing, after examining all of the relevant facts, I concluded that Rosario had committed "an extremely serious crime," based on his involvement in sessions that resulted in fifteen kilograms of heroin being distributed on the streets of Bridgeport, which "destroyed a lot of lives."  Hr'g Tr. 69 (Sept. 27, 2002), *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 1123).  I noted, however, that Rosario "did in [my view] have limitations, strict limitations on [his] involvement in this conspiracy" which had an impact on the appropriate sentence.  *Id.* at 69-70.  On the *Crosby* remand, I reaffirmed that I had "considered the nature and circumstances of the offense," including "the nature of the criminal activity, the substantial amount of drugs sold by this organization, the impact of the crime on the community . . . [and] Rosario's role in it."  Hr'g Tr. 52-53 (Nov. 30, 2006), *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 1567).

Having given due consideration to all relevant sentencing factors, it is within the district court's discretion to determine the weight given to each in determination of the final sentence. *See United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006) ("The weight to be afforded any given argument made pursuant to one of the § 3553(a) factors is a matter firmly committed to the

---

even if the firearms enhancement constituted an "element" of the offense instead of a "sentencing factor."

discretion of the sentencing judge and is beyond our review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.").  Although Rosario offered no substantive reasonableness argument on appeal, the Second Circuit has already held, *sua sponte*, that Rosario's sentence, which fell near the bottom of the Guidelines range applicable after a downward departure, was reasonable.  *Rosario*, 280 F. App'x at 80 (citing *Fernandez*, 443 F.3d at 27).  That holding undercuts Rosario's argument that his counsel was unreasonable and therefore ineffective.

Again, an attorney need not pursue all potential issues on appeal; the decision concerning what issues to appeal is left to the professional discretion of the attorney.  Such decisions may only be second-guessed in a collateral attack if it appears that the attorney "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo*, 13 F.3d at 533.  The other claims pursued by Attorney Sullivan certainly were not "clearly and significantly weaker" than arguing the meritless claims addressed here.  Had Attorney Sullivan raised those issues on appeal, Rosario would not have obtained relief.  Therefore, counsel's decision not to appeal Guidelines issues related to Rosario's role in the offense was neither deficient nor prejudicial to Rosario.

I.  Failure to Object that Sentence Constituted Cruel or Unusual Punishment

Rosario's eighth ground for relief asserts that his counsel was ineffective for not arguing that a 240-month sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment in these circumstances and violates the mandate of 18 U.S.C. § 3553(a) that a sentence be sufficient but not greater than necessary to achieve the goals of sentencing.

Rosario's twenty-year sentence clearly falls within constitutional bounds.  The Supreme Court has held that a sentence of life imprisonment without parole for a first offense of

18

possession of less than two pounds of cocaine was not cruel and unusual punishment in violation of the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957 (1991). The Second Circuit has also held that a sentence of life imprisonment for a serious drug trafficking offense does not constitute cruel and unusual punishment. *See United States v. Torres*, 941 F.2d 124, 128 (2d Cir. 1991); *United States v. Valdez*, 16 F.3d 1324, 1334 (2d Cir. 1994) ("sentences of life imprisonment for narcotics dealers are not 'cruel and unusual' within the meaning of the Eighth Amendment"). Under Second Circuit precedent, even a sentence that "exceed[s] any conceivable life expectancy of a convicted defendant," will not violate the Eighth Amendment's prohibition against cruel and unusual punishment, if "based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003).

Rosario received a sentence that was well below life imprisonment and also near the bottom of the Guidelines range that I found applicable in Rosario's case. Moreover, as I noted on remand, "I depart[ed] from the sentencing guidelines and, frankly . . . gave Rosario the benefit of the doubt on certain guideline enhancement questions." Hr'g Tr. 52-53 (Nov. 30, 2006), *United States v. Rosario*, No. 3:00-cr-00227-SRU-14. I imposed a sentence that I believed fairly and justly accounted for all of the factors set forth in 18 U.S.C. § 3553(a). And, as noted above, the Second Circuit has already reviewed Rosario's sentence and held it to be both procedurally and substantively reasonable. *Rosario*, 280 F. App'x at 80. Thus, his 240-month sentence is not "cruel and unusual punishment" under the Eighth Amendment and does not violate the mandate of 18 U.S.C. § 3553(a). Attorney Sullivan was not ineffective for failing to make such arguments at sentencing or on appeal.

J.   Habeas Relief Based on Amendments to Sentencing Guidelines

Rosario's first amendment to his section 2255 petition (doc. # 11) asserts that revisions to Section 5H of Sentencing Guidelines, which went into effect on November 1, 2010, would have permitted fuller consideration at sentencing of the fact that he became involved in the conspiracy at a young age, due to his "erratic home life."  Rosario contends that "[n]o consideration was given in regard to this factor when [he] was sentenced because without the Sentencing Commission Guidelines allowing such, it could not be done."  He indicates that he should be resentenced in a manner consistent with the new provisions.  Rosario is mistaken.

First, Rosario has no basis to avail himself of any changes to the Guidelines enacted approximately eight years after his sentencing (and four years after his *Crosby* remand).  Nothing in the revisions indicates that they provide for retroactive application with respect to the changes regarding consideration for specific offender characteristics.  *See* United States Sentencing Commission, Sentencing Guidelines for United States Courts, 75 FR 27388-01, 2010 WL 1923584 (May 14, 2010) (notice of submission to Congress of amendments to the Sentencing Guidelines effective November 1, 2010).  Second, Rosario has overlooked the decision on his *Crosby* remand, in which I held that his sentence was the appropriate and just sentence, under all of the statutory sentencing factors, irrespective of any constraints imposed by the formerly mandatory Guidelines.  Hr'g Tr. 52-53 (Nov. 30, 2006), *United States v. Rosario*, No. 3:00-cr-00227-SRU-14.  I stated explicitly at that time that in imposing the sentence, I had considered, among other things, "the factors that 18 U.S.C. section 3553(a) requires [the Court] to weigh, [including] the characteristics of the defendant," and specifically mentioned that I had "considered the fact that he had been active in sports at school, [and] that he had not had a prior criminal record before this, before this crime . . . ." *Id.*  Similarly, at the initial sentencing in

2002, I noted repeatedly that I had considered Rosario's age and other personal circumstances in setting his sentence. *See* Hr'g Tr. 69-70 (Sept. 27, 2002), *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (noting, for example, that defendant's crime was surprisingly serious given "your age, your age at the time you were doing this," and emphasizing that, among the factors weighing in the defendant's favor were the fact that "this is your first offense as a practical matter [and] you're a young man").

Finally, once again, Rosario's claim is undercut by the Second Circuit's holding that his sentence, which fell near the bottom of the post-departure Guidelines range, was substantively reasonable. *Rosario*, 280 F. App'x at 80. Accordingly, this ground for relief fails on the merits.

### K.   Failure to Object to Lack of Representation at Arraignment

Rosario's second motion to amend (doc. # 34) asserts that his Sixth Amendment right to counsel was violated because he was not represented by an attorney on December 7, 2000, when he entered a plea of not guilty. Rosario cites to docket entry 371 in the underlying criminal case, which he believes indicates that his attorney was appointed on February 27, 2001. Assuming that Rosario is not procedurally barred from raising this claim after failing to do so in his initial section 2255 petition, the record demonstrates that Rosario's assertion is erroneous.

The docket entry to which Rosario cites relates to interim payments for CJA counsel already appointed to represent Rosario and his co-defendants. The court's docket notes and Sullivan's affidavit both indicate that Sullivan was added as Rosario's attorney on December 7, 2000, the date of his arrest and initial appearance.[5] That is in accordance with Rule 44 of the

---

[5] Rosario's arraignment actually did not occur until February 1, 2001 and Rosario entered a plea of not guilty on that date, not December 7, 2000. *See* Notice of Arraignment, *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 242). Rosario ultimately was tried and convicted on the Third Superseding Indictment, *id.* (doc. #473), however, and he was arraigned on that indictment on, on July 6, 2001. *See id.*, Notice of Arraignment (doc. # 537). Rosario does not dispute that he was represented by counsel on the date he entered a plea of not guilty on the Third Superseding Indictment.

Federal Rules of Criminal Procedure, which entitles Rosario "to have counsel appointed to represent [him] at every stage of the proceeding from initial appearance through appeal." Fed. R. Crim. P. 44(a).

The only docket entry that could be read to support Rosario's assertion that counsel was not appointed until after his guilty plea is a CJA 20 form, docketed on March 2, 2001 and the corresponding text entry, which is labeled "CJA as to Ricardo Rosario: Appointment of Attorney Robert Sullivan." *See United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 360). The CJA 20 form, however, is filed after an attorney is appointed. *See* Notice to Newly Appointed CJA Attorney, http://www.ctd.uscourts.gov/sites/ default/files/forms /NTC-NewAppt.pdf (last visited December 11, 2014). Thus, the fact that Sullivan's CJA 20 form was not docketed until after he was appointed to represent Rosario is neither surprising nor problematic. There is no support for Rosario's contention that he did not have counsel prior to his entry of a plea and his Sixth Amendment rights were not violated in this regard.

    L.   Failure to Object to Violation of the Speedy Trial Act

Finally, Rosario's second motion to amend alleges that his rights to a speedy trial were violated. Pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161, *et seq.*, a criminal defendant who enters a plea of not guilty must be brought to trial within seventy days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1); *see also United States v. Tinklenberg*, 131 S. Ct. 2007 (2011). The seventy-day clock begins running on the day after the triggering event occurs. *United States v. Nixon*, 779 F.2d 126, 130 (2d Cir. 1985). The Speedy Trial Act, however, "excludes from the 70-day period delays due to certain enumerated events." *Bloate v. United*

22

*States*, 559 U.S. 196, 199 (2010) (citing 18 U.S.C. § 3161(h)).

On October 18, 2001, I issued a Speedy Trial Order with respect to Rosario and his co-defendants, which found that the number of indictments, defendants, counts and filed motions, among other things, rendered the case unusual and complex.  *See* Order Re: Speedy Trial, *United States v. Rosario*, No. 3:00-cr-00227-SRU-14 (doc. # 723).  Weighing the various statutory factors, I found that the ends of justice, including the defendants' interests in effective counsel and adequate trial representation, as well as the court's interest in the orderly administration of justice, outweighed the best interest of the public and the defendants in a speedy trial.  *Id.* (citing 18 U.S.C. § 3161(h)(7)(B)(i)-(iv)).  As a result, I found the period from June 20, 2001, the date the Third Superseding Indictment was filed, through the dates of the four trials for Rosario and his codefendants was not an unreasonable delay and excluded that period from the computation of time in which Rosario's trial was required to commence under the Speedy Trial Act.  *Id.* Thus, there was no Speedy Trial Act violation in this case.

I have considered the other claims raised by Rosario and conclude they are without merit.[6]

## IV. Conclusion

For the reasons set forth above, Rosario has failed to demonstrate that he was provided with ineffective assistance of counsel in violation of his Sixth Amendment rights or that his sentence should be vacated, set aside or corrected for any other reason.  Therefore, his section 2255 motion is DENIED.  A Certificate of Appealability will not issue, because Rosario has

---

[6] Section 2255 requires the district court to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).  "[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be."  *Id.* (citing *Machibroda v. United States,* 368 U.S. 487, 495 (1962)).  In *Chang*, the Second Circuit affirmed the dismissal of a

failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  Rosario has not demonstrated that "reasonable jurists could debate whether . . . the

petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further."  *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d

Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The clerk shall enter

judgment and close the case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 12th day of December 2014.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

section 2255 petition in a situation like this one, where no hearing was held but the record was "supplemented by a detailed affidavit from trial counsel credibly describing" the relevant circumstances.  *Id.*